THOMAS W. SHAULL et al., Appellants, v. SARAH C. SHAULL et al., Appellees.

DEEDS: Requisites and Validity—Warranty Deed Effective after Death of Grantor. An ordinary warranty deed passes title in fee on delivery, notwithstanding a provision therein that said deed shall *"take effect immediately upon the death of both grantors"* therein, because such clause does not constitute a limitation on the *granting* clause, but an implied limitation on *possession and enjoyment* only; and does not, therefore, convert the deed into a testamentary instrument, void for want of statutory formality in execution. (See Secs. 2917, 3274, Code, 1897.)

PRINCIPLE APPLIED: An instrument, in form of an ordinary warranty deed, recited that, for a consideration of $5,600, the grantor and his wife:

1. *"Do hereby sell and convey unto Michael Shaull and to his heirs and assigns,"* certain described real property.

2. *"This deed to take effect immediately upon the death of both the grantors herein."*

The usual covenants of a warranty deed followed these clauses. The grantor retained the instrument in his possession for nearly two and a half years, and then delivered it to a third party and took a receipt therefor, reciting, "left in escrow to be delivered to his son Michael Shaull, to take effect immediately upon the death of George W. Shaull (the grantor) for a consideration of $5,600." Four months later, the grantor, in writing, authorized the escrow holder "to have the following deed recorded which was left in escrow with him, Sept. 27, 1911, and to be delivered to Michael Schaull upon the death of both grantors." There was oral evidence that, at this time, the grantor directed the escrow holder to deliver the deed to Michael Shaull after it was recorded. The deed was recorded, as directed, and was, prior to the death of grantor, delivered to Michael Shaull. *Held*, the deed passed title *in praesenti*, and was not testamentary.

*Appeal from Iowa District Court.—R. P. HOWELL, Judge.*

FEBRUARY 6, 1918.

ACTION to quiet title. Opinion states the facts. De-

cree in the court below dismissing plaintiffs' petition. Plaintiffs appeal.—*Affirmed.*

*J. M. Dower,* and *Dutcher & Davis,* for appellants.

*Popham & Havner,* for appellees.

STEVENS, J.—I. The plaintiffs, and the defendants Michael Shaull and Eva Shriver, are the children of George W. Shaull, deceased. Defendant Sarah C. Shaull is his widow. The plaintiffs, being four in number, claim a four-sixth interest in a certain 80 acres of land, of which it is claimed George W. Shaull died seized. They bring this action, asking that their title be quieted as against the defendants. Defendants deny that the plaintiffs have any interest in the land, or had any interest in the land at the time of the death of George W. Shaull, as his heirs or otherwise. Michael Shaull claims to be the absolute owner of the said 80 acres of land, by virtue of a warranty deed executed on April 17, 1909, by George W. Shaull and his wife to Michael Shaull. The widow joins in the claim of Michael, and alleges that, under the deed, she is entitled to a life estate. Plaintiffs' reply is that the instrument is void because testamentary in its character. There are other allegations in the reply, which we need not consider. There was a trial to the court, the decree entered in favor of the defendants, holding that Michael Shaull is the owner of the property, subject to a life estate in the widow, Sarah C. Shaull, and decreeing that plaintiffs have no interest in the property in controversy.

It is conceded that the plaintiffs are heirs at law of George W. Shaull, and are entitled to share in whatever property he left, and would be entitled to share in this property, were it not for the execution of this deed. The deed relied upon by defendants recites:

"We, George W. Shaull and Sarah C. Shaull, his wife,

in consideration of the sum of $5,600 in hand paid by Michael Shaull, * * * do hereby sell and convey unto Michael Shaull and to his heirs and assigns, the following described premises." (Here follows a description of the property in controversy.)

Following the description, this clause appears: "This deed to take effect immediately upon the death of both the grantors herein"—followed by the usual covenants of warranty of title, against incumbrance, and for quiet enjoyment.

The only question here for our consideration is whether or not the clause in the deed, to wit, "This deed to take effect immediately upon the death of both grantors herein," renders the deed void as an instrument of conveyance. It appears that this deed was executed on the 17th day of April, 1909, and retained in the possession of George W. Shaull, the grantor therein named, until September 27, 1911. On the 27th day of September, 1911, the said George W. Shaull delivered the said instrument to one Arthur M. Vette, president of the People's Savings Bank at Marengo, Iowa, and took his receipt therefor in the following words:

"Received of George W. Shaull warranty deed dated April 17, 1909, for East ½ of the SE¼ of Section 16, Township 80 North, Range 11 West of 5th P. M., left in escrow to be delivered to his son Michael Shaull, to take effect immediately upon the death of George W. Schaull, for a consideration of $5,600.

. (Signed) "Arthur M. Vette."

On the 31st day of January, 1912, Mr. Vette and one Simmons went to the home of the deceased, and at that time, the deceased told Mr. Vette that he wanted it recorded, so he would be sure it would be carried out the very way he wanted it to be. Mr. Simmons testified that he said to Mr. Vette that he would like to have him put it on

record; that he thought it would be safer to do that than to keep it off the record.

Mrs. Sarah C. Shaull, the mother, testified that he said he wanted it recorded, and wanted it handed over to Mike. He said he wanted Mike to have it. He said, "Record it, and hand it over to Mike." Thereafter, it appears that deceased gave to Vette the following instructions in writing:

"We hereby authorize Arthur M. Vette, president of the People's Savings Bank of Marengo, Iowa, to have the following deed recorded which was left in escrow with him September 27, 1911, and to be delivered to Michael Shaull upon the death of both grantors [here follows a description of the property], which was executed by grantors the 17th day of April, 1909.

"Signed this 31st day of January, 1912.

"George Shaull."

In accordance with the verbal instructions so given, Mr. Vette caused the deed to be recorded, as directed, on January 31, 1912, and within a few days thereafter, it is claimed by him, delivered the deed so recorded to Michael Shaull.

Upon this state of the record, we are asked to say that the deed so drawn passed to Michael Shaull the fee title to the land in controversy, immediately upon its delivery, notwithstanding the limitation in the deed. The court below held that the deed passed title to Michael upon delivery, and that the words of the deed did not postpone the passing of title until the death of the grantors. This holding can be supported only on the theory that the deed itself conveyed the title *in praesenti*, and that, on the delivery to Vette, to be delivered to Michael on the death of the testator, the title passed immediately to Michael, the enjoyment of the thing granted being postponed only until the death, or that the limitation, if construed to defeat the grant, being in the habendum, was void, as repugnant to

the grant,—a holding which is supported by some of the authorities.

The rule adopted by this court in *Burlington University v. Barrett,* 22 Iowa 60, 72, as follows: "If the instrument passes a present interest, although the right to its possession and enjoyment may not accrue till some future time, it is a deed or contract; but if the instrument does not pass an interest or right till the death of the maker, it is a will, or testamentary paper," prevails, in substance at least, in all jurisdictions in this country. There is, however, very great apparent conflict in its application by the courts of the different states, and it has not always been consistently applied by the courts of the same state.

One rule of construction to be observed is to ascertain and carry out the intention of the grantor, if possible; and if the instrument is without ambiguity, such intention must be gathered therefrom. It is also a familiar rule of construction that effect must be given to all parts of the instrument, if possible. *Wilson v. Carter,* 132 Iowa 442; *Yeager v. Farnsworth,* 163 Iowa 537.

It is quite earnestly argued by counsel for appellant that the instrument in suit is clearly testamentary in character, and that the case is ruled by our prior decisions; whereas counsel for appellee maintains that the instrument may be given effect as a deed without in any way transgressing any prior holding of this court.

Before proceeding to a discussion of the question here presented, it may be profitable to determine the exact question before the court in each of the decided cases. In *Burlington University v. Barrett,* supra, *Tuttle v. Raish,* 116 Iowa 331, *In re Estate of Tolerton,* 168 Iowa 677, *In re Estate of Bybee,* 179 Iowa 1089, and *Haulman v. Haulman,* 164 Iowa 471, the instrument was either a contract or conveyance not in the usual form of a deed.

In *Saunders v. Saunders,* 115 Iowa 275, *Wilson v. Car-*

*ter*, supra, *Leaver v. Gauss*, 62 Iowa 314, and *Lewis v. Curnutt*, 130 Iowa 423, the instrument was in form a deed.

The instrument construed by the court in *Burlington University v. Barrett*, supra, was, in form and purpose, so wholly unlike that before us in this case as to afford little or no assistance beyond the statement of the rule above quoted.

In *Tuttle v. Raish*, supra, the instrument contained no words indicating an intention to convey the title to Jennie Tuttle, wife of the party executing the instrument, and it was neither in the form of a deed nor a will, and expressly provided that, "in the event of my death without children, * * * I do hereby make and constitute my wife, Jennie Tuttle, the sole owner in her own right of all of our property." The court rightly held that no present interest passed under the instrument, and the case is controlling in the case at bar only in so far as it reaffirms the rule announced in *Burlington University v. Barrett*, supra.

*In re Estate of Tolerton* involved a trust deed which it was claimed was testamentary in character, but same was sustained as a deed, and the language of the instrument was in no sense similar to that in the deed under consideration.

The instrument involved in *Ransom v. Pottawattamie County*, 168 Iowa 570, was, in *In re Bybee's Estate*, supra, construed as a will, and therefore entitled to probate.

*Haulman v. Haulman*, supra, is in no sense in conflict with the conclusion reached in this case, and throws light upon the question here presented only in so far as it states, or discusses, general rules to be observed and followed in the construction of written instruments of like character.

We come now to the consideration of cases more nearly analogous to the question before us, and in which the instruments before the court were deeds in form. The one most frequently cited by this and other courts is *Leaver*

*v. Gauss,* supra. In that case, the deed contained the following language: "to commence after the death of both the said grantors;" and also the following: "It is hereby understood and agreed between the grantors and the grantee that the grantee shall have no interest in the said premises as long as the said grantors or either of them shall live, and that, after the death of both the said grantors, the grantee shall have and hold the premises by fee simple title." It will be observed that that instrument provides that it shall "commence after the death of both grantors," that they "shall have no interest in said premises" so long as either of the grantors survive, and that, "after the death of both grantors, the grantee shall have and hold the premises by fee simple title." The instrument twice, in express words or substance, states that the instrument shall become effectual to pass title at the death of grantors, and at least once, by express language, negatives any intention to pass title until after the death of grantors. The instrument was held testamentary in character and void.

The court held that the intention of the grantor to pass a present interest and to postpone the enjoyment of it was apparent in *Saunders v. Saunders,* supra. The court, in distinguishing this case and *Leaver v. Gauss,* supra, gives special emphasis to the language of the latter negativing the intention to pass a present interest.

In *Wilson v. Carter,* supra, the language used, while affirming the intention to convey title to the grantee named, negatively declared that no title should pass until delivery of the deed *after the death of the grantor.* The grantor clearly did not *intend* that the delivery of the deed as an escrow should pass title, and that *no title* should pass until the instrument was *delivered after her death.*

*Lewis v. Curnutt,* supra, involved the construction of a deed and a separate instrument contemporaneously executed; but the deed was a warranty deed in the usual form,

without qualification or limitation, and the necessity for construction arose because of the contract. We will refer to this case later in this opinion.

We now desire to consider a few decisions selected at random from the reports of other states. These will serve to illustrate the difficulties with which courts have to contend in cases of this character, as well as their divergent views thereon.

Deeds containing the usual granting clause and covenants were sustained as valid instruments of conveyance, notwithstanding the following words were used in the habendum:

"This deed not to take effect until the death of the said John and S. E. Hunt." *Hunt v. Hunt*, 119 Ky. 39 (82 S. W. 998).

"This deed shall take and be in full force and effect immediately after the said William Logan shall depart this life, and not sooner." *Lauck v. Logan*, 45 W. Va. 251 (31 S. E. 986). The court in this case held that the intention of grantor was to reserve a life estate.

"To be of no effect until after death of [grantors], then to be in full force." *Wilson v. Carrico*, 140 Ind. 553 (40 N. E. 50).

"This deed not to take effect until after my decease—not to be recorded until after my decease." *Shackelton v. Sebree*, 86 Ill. 616.

"Not to take effect during my lifetime and to take effect and be in force from and after my decease." *Wyman v. Brown*, 50 Me. 139.

"This deed to take effect at my death." *West v. Wright*, 115 Ga. 277 (41 S. E. 602).

"This conveyance is not to take effect until after my death, and that, at my death, the title to the foregoing described lands are to vest immediately in my said children." *Abney v. Moore*, 106 Ala. 131 (18 So. 60).

"And the deed shall go into full force and effect at my death." *Bunch v. Nicks,* 50 Ark. 367 (7 S. W. 563).

"To be in force from and after my decease and not before." *Latimer v. Latimer,* 174 Ill. 418 (51 N. E. 548). In this case, however, the grantee, who was the son of grantor, entered into possession and incurred expense in improvements before the grantor's death.

"To have and to hold the above described premises to the said Bryant P. Wynn, of the second part, his heirs and assigns, to be his at my death, and the death of my wife." *Wynn v. Wynn,* 112 Ga. 214 (37 S. E. 378).

"This deed is not to take effect until the death of Jesse Phillips, and Jesse Phillips is to have and keep full possession of said farm during his life, and to have all proceeds of said farm until his death." *Phillips v. Thomas Lbr. Co.,* 94 Ky. 445 (42 Am. St. Rep. 367).

On the other hand, the following language was held testamentary, and the instrument void:

"All my right, title, interest and claim to the land described in the within deed to Diana McGahey, her heirs and assigns, for her sole benefit and use during her natural life. After her death, the same to be divided among my legal heirs. Provided this assignment shall not take effect until after my death." *Coulter v. Shelmadine,* 204 Pa. 120 (53 Atl. 638).

"This deed is to take effect and be in full force from and after my death." *Pinkham v. Pinkham,* 55 Neb. 729 (76 N. W. 411).

"The conveyance of land herein named shall be and continue the property of the first party during his lifetime, and the remainder to said second party immediately at the death of said first party. But in the event of the death of the second party before the said first party, then the estate herein shall go to said first party as before." *Bigley v. Souvey,* 45 Mich. 370 (8 N. W. 98).

"But in no event is this deed to go into effect until after my death." *Donald v. Nesbit,* 89 Ga. 290 (15 S. E. 367).

"The intention of this instrument of writing is such that Mrs. Anna Ellison relinquishes her entire right at her death, then this deed is to immediately come into effect, but not until then." *Murphy v. Gabbert,* 166 Mo. 596. (66 S. W. 536).

See also *Griffin v. McIntosh,* 176 Mo. 392 (75 S. W. 677); *Hazleton v. Reed,* 46 Kan. 73 (26 Am. St. Rep. 86); *Horn v. Broyles,* (Tenn.) 62 S. W. 297; *Brice v. Sheffield,* 118 Ga. 128 (44 S. E. 843).

It will thus be observed that courts have construed instruments in which the intention to pass a present interest is much less clearly evinced than in the instrument before us as valid instruments of conveyance, and have held language quite similar in meaning and import to that in question testamentary in character, and the instrument containing same ineffectual as a conveyance.

The Supreme Court of California, in *Nichols v. Emery,* 109 Cal. 323 (41 Pac. 1089), states the characteristic elements of a testamentary instrument as follows:

"The essential characteristics of an instrument testamentary in its nature is that it operates only upon and by reason of the death of the maker. Up to that time it is ambulatory. By its execution the maker has parted with no rights and divested himself of no modicum of his estate; and, per contra, no rights have accrued to, and no estate has vested in, any other person. The death of the maker establishes for the first time the character of the instrument. It at once ceases to be ambulatory. It acquires a fixed status, and operates as a conveyance of title. Its admission to probate is merely a judicial declaration of the status."

If, therefore, the clause "this deed to take effect imme-

diately upon the death of both the grantors herein" is to be construed as a limitation upon the granting clause, and to prevent the vesting of title until after the death of the grantor, then same is void, because not properly executed as a testamentary grant. The language of the deed does not, in express terms, negative an intention upon the part of grantors to pass a present interest to said real estate; nor does it, in clear terms, declare that to be their intention. The instrument is, in form, a warranty deed, and it must be assumed that the makers had some understanding of the nature of the instrument they executed, and of the distinction between same and a will.

The receipt given by Mr. Vette referred to the instrument as a "warranty deed," and the written direction of the grantor, George Shaull, to Mr. Vette was, to record it as a "deed." There was also evidence to the effect that Mr. Shaull said he wanted the deed delivered to appellee and recorded.

While it has often been held that the form of the instrument is not controlling, and, though in form a deed, it may, nevertheless, be construed as a will, yet the fact that the instrument is in form a warranty deed, containing the usual words of conveyance and covenance and covenants of warranty, should be given weight in ascertaining the intention of the grantor.

In *Saunders v. Saunders,* supra, the court had a deed before it containing the following provision:

"* * * subject, however, to the occupancy and possession of said real estate for and during the natural life of the grantor. The intention being that this deed shall not be in force or take effect until after the death of the grantor herein."

The court held that the intention of the grantor to pass a present interest, subject to the life use of the premises, was apparent from the terms of the instrument. As ob-

served in this case, the instrument specifically stated that it should not take effect or be in force until after the death of the grantor. The court laid stress upon the form of the instrument, the fact that same was duly recorded, and the further fact that the instrument, if given effect at all, must be held to have conveyed a present interest, subject to the life use. The court in that case said:

"It says that the maker does 'hereby sell and convey' land accurately and specifically described. It contains a covenant that the maker holds said premises by 'good and perfect title;' that she has 'good right and lawful authority to sell and convey the same;' that it is free from all incumbrances; and the title is warranted. It was acknowledged, delivered, and filed for record in the proper office, and duly recorded. All of these matters are considered as strong evidence of an intention to convey an interest *in praesenti.* Again, the instrument cannot be given force as a will, and the law presumes that the maker knew what requisites were necessary to give it such character, and that they were intentionally omitted. It is also to be presumed that she intended to make a valid instrument, and it will be so construed, if possible. The instrument says that the conveyance is 'subject, however, to the occupancy and possession of said real estate for and during the natural life of the grantor.' It will be noticed that the language here used is only consistent with the conveyance of a present interest, and furnishes a strong indication of the intent of the grantor. Then, in the language following, the instrument is referred to as a 'deed,' and from the whole instrument, there can be but little question as to the grantor's intention when she executed it."

Again, in *Lewis v. Curnutt,* supra, it is said:

"We must assume that the grantor was a person of average intelligence and meant something by this formal deed and declaration."

Such has often been the holding of the courts. *Cates v. Cates*, 135 Ind. 272 (34 N. E. 957) ; *Love v. Blauw*, 61 Kan. 496; *West v. Wright*, 115 Ga. 277 (41 S. E. 602) ; *Jones v. Caird*, 153 Wis. 384 (141 N. W. 228) ; *Graves v. Atwood*, 52 Conn. 512; *Wyman v. Brown*, supra.

The form of the instrument is, of course, not conclusive; but, when taken into consideration with the evident purpose of the grantor at the time the deed was delivered to Mr. Vette, and receipt given therefor, and the subsequent written direction to him to place same of record and deliver it to appellee, the intention to make a valid conveyance is apparent. The recording and direction to Vette to deliver the instrument to Mike Shaull could have been for no other purpose than to vest him with title to the land. The deed was to become finally effective at the death of the grantors; possession and enjoyment, which had been postponed by the clause in question, and all rights under said deed were then to pass; and the evident purpose and intention of grantor was that the grantee should have title to the land.

Unless so construed, the instrument is void, and the purpose and intention of the grantor in the execution thereof defeated. It is elementary that the instrument must be sustained if possible, and to do this, it will be most strongly construed against the grantor. It is evident from the instrument that it was the intention of the grantors that the possession of, and full dominion over, the property was to pass to grantee at the death of grantors, but that title was to vest under the instrument, subject to an implied limitation in their favor. This conclusion is not in conflict with our prior holdings, and is in harmony with the holding in *Saunders v. Saunders* and *Lewis v. Curnutt*, supra.

II. Appellants also rely upon the claim that grantor was mentally incompetent to make the conveyance, and that the deed was not delivered to the grantee. We will not

discuss the evidence bearing upon the question of the grantor's competency, but have carefully examined the record, and are of the opinion that it is wholly insufficient to sustain this claim. The written direction to Mr. Vette at the time the deed was delivered to him, also, later, to have same placed of record, coupled with the further oral direction to cause it to be recorded and delivered to the grantee, notwithstanding the fact that the evidence of actual delivery by Vette to Shaull prior to the death of his father is not entirely satisfactory, is sufficient from which delivery may be inferred.

Other questions discussed are not controlling, and we need not refer thereto at this time. For the reasons pointed out, the judgment of the lower court is—*Affirmed.*

PRESTON, C. J., LADD, WEAVER, and EVANS, JJ., concur.

SALINGER, J. (concurring). This opinion runs counter to my dissent in *Meyer v. Stortenbecker,* decided September 30, 1918. But a rule of property is involved, and I now follow the majority in said cause, and therefore concur.