## ELSE ET AL. V. KENNEDY.

1. **Voluntary Conveyance:** MISDESCRIPTION: REFUSAL OF EQUITY TO REFORM DEED AND QUIET TITLE. Courts of equity will not assist the grantee in an imperfect conveyance, which is not supported by either a valuable or meritorious consideration, against either the grantor or his representatives. (See authorities cited in opinion.) And so, where defendant, to whom her mother owed no duty that she did not owe to her other children, procured from her mother, without consideration, a deed, alleged to have been intended as a conveyance of certain land owned by the mother, but which did not describe the land in question, and thus failed to operate as a legal conveyance of it, *held* that she (defendant) was not, after the death of the mother, entitled to a decree in equity, against the other heirs of her mother, reforming the deed so as to describe the land intended to be conveyed, as alleged, but that the other heirs were entitled to a decree quieting in them severally such interest in the land as they were entitled to by inheritance.

*Appeal from Mahaska Circuit Court.*

### FRIDAY, OCTOBER 23.

PLAINTIFFS brought this action to quiet in each of them the title to one-sixth of a certain tract of land. They claim as heirs at law of Elizabeth Else, deceased, who was their mother, and they allege that defendant, who is their sister, claims the whole of the premises under a certain deed to which their mother's name was signed before her death, and which has been placed of record since she died. They allege that said deed was obtained by defendant without consideration and by undue influence; that it is void for uncertainty in the description of the property conveyed; and it was never executed and delivered by their mother, but that her signature was attached thereto when she was in a dying condition, and when she was incapable of understanding or executing a contract; and that after her signature was attached to said deed it was altered in a material respect by defendant's attorney with her approval, but without the knowledge or consent of said Elizabeth Else. Defendant denies the allegations that

she obtained said deed by undue influence, and that it was not executed and delivered by Elizabeth Else, and that it was altered after its execution without the knowledge or consent of their mother. And in a cross-petition she prays that the description of the property contained in said deed be so reformed and corrected as to make the instrument describe the property intended to be conveyed by it, and that her title to the property be quieted. The circuit court dismissed both petitions, and both parties appeal.

*John F. Lacey,* for plaintiffs.

*Geo. W. Lafferty,* for defendant.

REED, J.—Elizabeth Else died on the twenty-second of August, 1882. The deed in question was signed on the day before her death. The propery which it purported to convey at the time her signature was attached to it was the N. W. ¼ of the N. E. ¼ of section 19, in township 76, range 16. The property which she actually owned at the time is lot 1, in S. E. ¼ of the N. E. ¼ of section 24, township 75, range 16, and 12 feet in width off of the south side of lot 2, in the same subdivision of said section. The notary public who wrote the instrument discovered on the same day on which it was signed that a mistake had been made in the description of the property, and undertook to correct the same. He struck out the description which was written in the deed when Mrs. Else's signature was attached to it, and wrote in lieu of it the following description: " N. pt. lot one, (1,) S. E., N. E., section 24, township 75, range 16. Twelve ft. off S. pt. lot 2, S. E., N. E., section 24, township 75, range 16." He informed defendant of this alteration on the day on which it was made, but Mrs. Else's attention was not called to the matter. Mrs. Else was taken sick thirty-six hours before the deed was signed, but her condition had been regarded as dangerous only for six or eight hours before the signing of the

deed. Her disease was cholera morbus, and she was very much prostrated at the time. He physician describes her as being in a condition of collapse, and she was under the influence of an opiate which the physicians had administered to relieve her of the cramping caused by the disease. The physician testified that he visited her on the day on which her signature was attached to the instrument, both before and after it was signed, and that, while her mind did not act vigorously, and, except when spoken to, she paid but little attention to what was going on about her, yet, when she was spoken to, she answered responsively and intelligently to such questions as were asked her. The notary public who wrote the deed testified that he explained to her the character of the instrument, and the property to which it related, and that, while she did not speak, she indicated by a nod of the head that she understood him, and comprehended the character of the instrument, and that when he asked her whether the deed was her voluntary act she indicated her assent in the same manner. When the signature was attached she took the pen in her hand, and by the assistance of the notary, who steadied and guided her hand, wrote her name.

The testimony of other witnesses who were present at the time of the transaction tends strongly to show that her condition at the time was such that it is hardly possible that she could have comprehended what was being done. She acquired the property in question by devise from her husband, who died in 1879. She also acquired other real estate in the same manner, which she had sold in the mean time, and she paid a portion of the money derived from this sale to four of her children, taking from each a written agreement to pay her ten per cent interest per annum on the amount so advanced, and which provided that if the interest should be paid annually when due the principal should at her death be treated as an advancement. Defendant and Mrs. Mattox, one of the plaintiffs, did not receive any money under this arrangement, but the evidence shows that their mother retained

for each of them the same amount which was advanced to each of the other children, which she desired to advance to them upon the same terms, but which they had never accepted. It is shown that on several occasions, one or two of which were but a few days before her death, she expressed the wish that upon her death her children should share equally in her property. It is also shown that on other occasions she said she expected to live with defendant during the remainder of her life, and that it was her intention that defendant should receive the property in question. There is no evidence, however, of any contract or agreement between her and defendant that the latter should care for or support her, or that the property should be given to her in consideration of any services she should render her. For the greater part of the time after the death of her husband, however, Mrs. Else and defendant did reside together. During a portion of the time they lived in the property in question, which, before the death of the husband and father, was the family homestead. At other times they lived in rented property, and at the time of Mrs. Else's death they lived in rented rooms. Mrs. Else was about seventy-four years of age at the time of her death, but before she was taken with her last sickness she had always enjoyed good health, and was vigorous and active, and gave attention to her affairs. The deed was prepared by the notary at defendant's request, and there is no competent evidence that the matter had been spoken of by her mother at any time after she was taken sick.

If it should be conceded that at the time her signature was attached to the deed Mrs. Else was mentally capable of entering into a contract, or of making a disposition of her property, and that the notary had authority, when he discovered that the instrument as written did not describe the property intended to be conveyed, to alter it by striking out that description and inserting the one intended, it would still be apparent that the deed as altered does not vest defendant with

the title to the property in question. The description, " N. pt. lot 1," and " 12 ft. off S. pt. lot 2," does not describe any property with certainty. It is void for uncertainty. The question presented by the case, then, is whether defendant is now entitled to be adjudged the equitable owner of the property, and whether she is entitled to have the deed so reformed as to make it evidence in her hands of title to the property. It is rendered clear by the evidence that the deed is not supported by any valuable consideration. It is clear, also, that Mrs. Else intended (if she was capable of forming any intent with reference to the transaction) to convey the property in question. The deed, then, was an imperfect voluntary conveyance, and it is well settled that courts of equity will not assist the grantee in an imperfect conveyance, which is not supported by either a valuable or meritorious consideration against either the grantor or his representatives. See Story, Eq. Jur., § 793*b; Bunn v. Winthrop*, 1 Johns. Ch., 329; *Minturn v. Seymour*, 4 Id., 497; *Haines v. Haines*, 6 Md., 435; *Shepherd v. Bevin*, 9 Gill., 32; *Holland v. Hensley*, 4 Iowa, 222; 1 Lead. Cas. Eq., (3d Amer. Ed.,) 324.

It is said, however, that the deed was executed for the purpose of making provision for a child, and that this constitutes a meritorious consideration which will support the conveyance. Cases are not wanting which hold that the natural and moral obligation which is imposed upon a husband and father to make provision for his wife and children constitutes a consideration which will support a conveyance made by him for the purpose of making such provisions against mere volunteers under him. The cases cited above from 1 and 4 Johns. Ch. hold this doctrine. See, also, Story, Eq. Jur., § 793*d*. But we are of the opinion that the facts of this case do not bring it within the principle of this exception. Mrs. Else was under no natural or moral obligation to make any greater or different provision for defendant than for her other

children. For, as stated above, defendant was under no obligation to render her any special services, or give her any special care, and it does not appear that she had given her any such service or care. Each of her other children owed her the same duty to minister to her wants and contribute to her comfort which was due to her from defendant, and it does not appear that any of them had been wanting in this respect. And there was nothing in defendants condition or circumstances which rendered it necessary that special provision should be made for her support. It is not doubted that the mother had the right to make a greater provision for defendant than for her other children. And if her intention to make such provision had been fully carried out by the execution and delivery to defendant of a conveyance of the property, it is equally well settled that a court of equity would not have interfered on the application of the other children to set such conveyance aside on the ground alone that it was not supported by a consideration. But, as the deed which was executed did not operate as a conveyance of the property to defendant, and as the promise to make the conveyance is not supported by either a valuable or meritorious consideration, equity will not interfere or lend its aid to enforce it. In the case of *Stewart v. Brand*, 23 Iowa, 477, which is greatly relied upon by defendant, the defective voluntary conveyance was by a husband to his wife, and it was reformed by the court in an action by a third party against the husband. The holding in that case can be sustained on the ground that the conveyance was a provision for the wife, and the rights of third parties had attached, although the ground upon which it is placed is not stated in the opinion. We think, therefore, that the circuit court rightly held that defendant is not entitled to a judgment quieting the title to the property in her or reforming the deed. But we are also of the opinion that plaintiffs are entitled to judgment quieting in each of them the title to one-sixth of the property.

Else et al. v. Kennedy.

On defendant's appeal the judgment will be affirmed.   On plaintiffs' appeal it will be reversed, and the cause will be remanded, with directions to the circuit court to enter a judgment in harmony with this opinion;  or, if defendants so elect, such judgment will be entered in this court.